UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID M. ZOLMAN
          Plaintiff,                CIVIL ACTION NO. 08-14704

      v.                         DISTRICT JUDGE BERNARD A. FRIEDMAN

COMMISSIONER OF            MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

          Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action for judicial review of the defendant's decision denying plaintiff's application for Social Security disability benefits.  Plaintiff, born in 1949, was 55 years old on his alleged onset date.  He is currently 60 years old.   He has a high school education (GED) (Tr. 150) with past relevant work as a construction laborer and heavy equipment operator.  Plaintiff filed the instant application alleging that he became disabled February 1, 2005, due to a stroke and accompanying residuals.  Plaintiff had a hearing before an ALJ at which he was represented by counsel.  After considering the medical evidence and testimony, the ALJ found that plaintiff had "severe impairments" of status post cerebral vascular accident (CVA) with minimal right side residuals, hypertension under control, gastroesophageal reflex disease (GERD), and depression.  (Tr. 17)  The ALJ further found that despite the impairments plaintiff retained the ability to perform a restricted range of light work, including operation of construction

- 1 -

equipment, but could not perform his past relevant work. (Tr. 23) Plaintiff had acquired work

skills, transferable to other light work, and could perform jobs existing in significant numbers.

Therefore, he was not disabled. (Tr. 23-25).  Plaintiff argues that the defendant's decision is not

supported by substantial evidence.  Defendant contends otherwise.  For the reasons discussed in

this Report, it is recommended that the plaintiff's motion for summary judgment be granted, that

of the defendant denied, the decision denying benefits be reversed, and the matter remanded to

the agency for calculation of benefits due.

**Standard of Review**

      The issue before the court is whether to affirm the Commissioner's determination.  In

Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining
> whether the Secretary's findings are supported by substantial
> evidence and whether the Secretary employed the proper legal
> standards in reaching her conclusion.  42 U.S.C. §405(g);
> Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed.
> 2d 842 (1971).  Substantial evidence is more than a scintilla of
> evidence but less than a preponderance and is such relevant
> evidence as a reasonable mind might accept as adequate to support
> a conclusion.  Consolidated Edison Co. v. NLRB, 305 U.S. 197,
> 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938).  The scope of our
> review is limited to an examination of the record only.  We do not
> review the evidence *de novo*, make credibility determinations nor
> weigh the evidence.  Reynolds v. Secretary of Health and Human
> Services, 707 F.2d 927 (5th Cir. 1983).

Brainard, 889 F.2d at 681.

      To establish a compensable disability under the Social Security Act, a claimant must

demonstrate that he is unable to engage in any substantial gainful activity because he has a

medically determinable physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last, for at least 12 continuous months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).  If a claimant establishes that he cannot perform his past relevant work, the burden is on the Commissioner to establish that the claimant is not disabled by showing that the claimant has transferable skills which enable him to perform other work in the national economy.  Preslar v. Secretary of HHS, 14 F.3d 1107 (6th Cir. 1994); Kirk v. Secretary of HHS, 667 F.2d 524, 529 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

**Plaintiff's Claims:**

Plaintiff argues that the determination to find him not disabled at step four is not supported by substantial evidence.  The ALJ found him able to stand and/or sit for 8 hours, lift 20 pounds occasionally, and 10 pounds frequently.  (Tr. 24) The ALJ also found plaintiff able to perform semi skilled work activities including machine operations and operating motorized construction equipment.  The ALJ applied Grid Rule 202.07 to direct a conclusion of not disabled.  (Finding #10, Tr. 23)  Plaintiff argues that his impairments of impaired concentration and physical impairments prevent his performance of the semi-skilled machine operator jobs identified.  The state disability examiners in August, 2005, found him able to perform only unskilled work and, plaintiff argues, the proper rule under the Grid is Rule 202.06, thus, a conclusion of disabled should result.

**Medical Evidence**

Plaintiff was hospitalized at North Oakland General Hospital from February 21, 2005 through February 23, 2005 due to a stroke with right sided weakness and other effects. (Tr. 110-

- 3 -

114)   After his discharge, he was followed by physicians who noted post stroke depression and

fatigue on March 25, 2005.  Depression was again recognized on June 3, 2005. (Tr. 134, 139) In

August, major depression, right sided weakness, and hypertension were noted.  (Tr. 133)   In

August, 2005, Dr. Ahmed, plaintiff's treating physician and a Board certified Neurologist,

reported that plaintiff had right sided numbness confirmed by pinprick, aching, and was unable

to lift more than 5 to 10 pounds.  (Tr. 155, 158) His blood pressure was 155/80.  (Tr. 158)

Continuing through October 7, 2005, right side weakness and major depression were again

noted. (Tr. 132)

        In December, 2006, plaintiff saw Dr. Slaby in Florida.  Dr. Slaby reported that plaintiff

had stable hypertension, virtually no weakness from the stroke, and was on cholesterol lowering

medication.  He was strongly advised to stop smoking, although plaintiff on that occasion and

others indicated that he had no desire to quit smoking. (Tr. 168) Plaintiff indicated to Dr. Slaby

that he did go through some physical therapy.  (Tr. 169) He complained of having some right-

sided numbness. Id. His blood pressure was 130/80 with medication.  Id.  He is a widower and

his wife of 33 years died in 2004, the same year he had his stroke. (Tr. 169)

        There is some reference to plaintiff's treatment at a VA Hospital in Michigan, but no VA

records appear in the file. (Tr. 162) When seen by Dr. Brian Slaby, MD in Florida in February,

2007, it was reported that he gets an annual physical through the VA in Michigan.  Plaintiff's

blood pressure was 142/74.  Dr. Slaby noted that the CVA was "resolved." (Tr. 162) In

February, 2007, Dr. Slaby reported that plaintiff has 5/5 strength in all extremities but has

intermittent fatigue, headaches, malaise and fevers and elevated White Blood Count.  He was

- 4 -

started on treatment with Avelox 400 mg for ten days and if no response then a work up for possible endocarditis or a blood disorder. Plaintiff did not finish the medication as it upset his stomach but stated he felt better. The history of leukocitis was noted. (Tr. 162-167)

In April, 2007 plaintiff was seen at the North Oakland Medical Center for left foot pain and swelling. (Tr. 170). It was noted that he had moved to Florida but stays in Michigan for a few months each year. He was given medication and told to follow up in one week. Id.

The Mental Residual Functional Capacity Assessment indicates the plaintiff is moderately limited in his ability to maintain attention and concentration for extended periods of time. A Psychiatric Review Technique Form is consistent with that, the reviewer finding that plaintiff had moderate difficulties in maintaining concentration, persistence, and pace. (Tr. 94, 98) The consultive psychological report notes that plaintiff had right sided weakness on ambulation, mood disorder due to CVA with features of agitation, anxiety, and panic feelings; adjustment disorder with mixed anxiety and depressed mood, and difficulties with concentration. Plaintiff was noted to be unable to work effectively in the labor market since the stroke and also had past learning problems and a limited education. His GAF was 50, indicative of serious symptoms. (Tr. 152)

**Non-medical evidence:**

At the agency interview March 26, 2007, the social security employee noted that plaintiff had difficulty sitting, walking, writing, and reading. He reported that plaintiff had post-stroke partial paralysis in his arm, leg, and face. Plaintiff walked with a limp, had trouble holding a pen to sign forms, and had a drooping right side of the face. (Tr. 56) Plaintiff also testified to these

- 5 -

circumstances and reported that he had paralysis on the right side of his face and arm due to the stroke. He is unable to write checks or pay bills.

At the time of the hearing, plaintiff was 58 years old. (Tr. 212)  He testified that he worked for 20 years as a heavy equipment operator building roads, and bridges, and sewers. (Tr. 199) He worked til the end of the season in 2004, was laid off, and was not able to go back to work after the stroke in February, 2005. (Tr. 199-200)  He went to the clinic, was diagnosed with the flu, but returned after they sent him home and he continued to vomit and had other symptoms. Then the doctors diagnosed stroke. (Tr. 200) He was hospitalized for three days. Id. As a consequence, he has loss of sensation in his right leg and hand. (Tr. 200-201, 209) He has good days and bad days, and weakness of the right arm and leg and the right side of his face. (Tr. 201-202) The residuals in his face have lessened quite a bit. (Tr. 203)  He estimates that he has lost about 80% of his right arm strength after the stroke.  (Tr. 203)  He thinks that he could walk a block, he does household chores slowly, and naps for two hours a day. (Tr. 207-208) Plaintiff takes medication for his high blood pressure, stated was not referred for physical therapy after the stroke [differs from what he told Dr. Slaby], and is fatigued during the day. He sleeps all right at night. (Tr. 206) He has some difficulty with balance and with stairs, as well as with grasping and manipulating things. (Tr. 208-209)

The ALJ asked the vocational expert about the effect of the plaintiff's right-sided numbness. The VE opined that plaintiff could not do jobs involving driving or operating heavy construction equipment. All those jobs were semi-skilled. (Tr. 212-217)  The issue of fatigue and napping was a major barrier to working, according to the vocational expert. (Tr. 213) If he

- 6 -

did not need to lie down during the day, if the hypertension were under control, if his depression did not affect his ability to function vocationally, then he would not be able to return to his past work, but he could do other machine operation jobs.  If he needed to change position, had an unsteady gait, and right sided weakness which was more than mild, then he could not do those jobs. (Tr. 216) If his testimony regarding the degree of his unsteady gait was accepted, then he could not work at those jobs. (Tr. 217) If his testimony regarding the loss of strength in his right arm to the factor of 80% were accepted, then he could not do the jobs identified. (Tr. 217) The same would be true for right sided leg weakness.  (Tr. 217-218)

**Analysis**

Plaintiff does not take issue with the ALJ's finding that he is able to perform a limited range of light work. Plaintiff submits that he does not have the RFC for semi-skilled work, at least that work identified by the ALJ.  Plaintiff correctly notes that if he were limited to unskilled work, the GRID Rule 202.06 would direct a conclusion of disabled.  Plaintiff relies on his testimony, other medical evidence, and an August 2005 assessment by a state agency physician reviewer which concluded that he was limited to unskilled work.  (Tr. 82, 100)

A review of the record evidence indicates that the conclusion that plaintiff can perform semi-skilled work involving operating construction machinery is not supported by substantial evidence.  Plaintiff has physical issues of right sided weakness and mental issues of lack of concentration and depression which bear on his ability to perform the semi-skilled work identified.

Plaintiff claims the ALJ did not properly evaluate his complaints of disabling mental limitations.  The ALJ found him not to be credible.  A determination of disability based on non-exertional impairments like pain, or lack of concentration, depends largely on the credibility of the plaintiff.  Houston, 736 F.2d at 367; Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997); Villarreal v. Secretary of HHS, 818 F.2d 461, 463 (6th Cir. 1987). In Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability.  Subsequently, the Social Security Act was modified to incorporate the standard.  20 C.F.R. § 404.1529 (1995).  A finding of disability cannot be based solely on subjective allegations.  There must be evidence of an underlying medical condition and (1) there must be objective  medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to produce the result. Cf.  Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991). Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly.  Villarreal, 818 F.2d at 463 and 464.

The defendant argues that plaintiff did not have disabling mental restrictions.  The court believes that the issue is not whether they are disabling *per se*, but whether they affect plaintiff's ability to do the semiskilled work identified.  In August, 2005, the consulting psychologist limited plaintiff to unskilled work due to problems with concentration, sleep disturbances, and feelings of hopelessness and helplessness. (Tr. 147-153) Defendant argues that plaintiff's activity record shows that he can do semiskilled work operating construction equipment.

Plaintiff reports that on a typical day he awoke, made coffee, loaded the dishwasher, fed his cat, took medication, watched TV, and relaxed.  He fed and watered the cat, changed the litter box with help from his daughters, and vacuumed.  He went outside once a day and shopped for basic needs once a week. (Tr. 66)  To the court, these activities do not seem to be necessarily indicative of an ability to operate construction machinery and equipment and reliance on them cannot serve as substantial evidence.

In addition, the ALJ's statement that the VE found that plaintiff had transferable skills seems to be somewhat taken out of context. (Tr. 23)  The VE found that plaintiff had no skills transferrable to sedentary work and that his past work was medium and semi-skilled.  If he were limited to light work, he had some skills in operating equipment, that which did not require him to lift anything.  (Tr. 212) If his testimony were fully credited, the VE stated that plaintiff could not work. (Tr. 212) If he were able to sit and/or stand throughout the day and did not need to lie down, he still would not be able to perform the machine operation jobs.

At that point, the ALJ asked the VE to assume that plaintiff could sit and/or stand without difficulty for an 8 hour workday, could lift 20 pounds occasionally, and ten pounds frequently. In addition, the assumptions included a history of CVA with residual parathesis/numbness, but that the residuals were minimal loss of strength and only slight decrease in tactile sensation. Further, the assumption was that there were only intermittent, transient episodes of fatigue that did not interfere with work functioning, and to assume that the depression had no effect vocationally and there was no need to lie down during the day.  With those assumptions, the VE opined that such a person could perform 3000 jobs in the Detroit area and 6000 state-wide.  The

VE had previously identified these as "combined jobs of construction and operating equipment.. Jobs of just operating equipment which would not require the lifting so they would be operative in nature." These jobs were not further identified.

Upon questioning by the lawyer, the VE stated that if plaintiff could sit or stand but had to change position when he needed to, then he could not do the machinery operation jobs. If he needed to lie down, he could not do the jobs. If he had problems using his legs or arms, he could not do the jobs identified. Plaintiff testified to a series of limitations based on residuals of his stroke. While the medical evidence does not completely support the plaintiff's testimony–eg loss of 80% strength in right arm is not consistent with the doctor's finding that there is very little difference in strength between the left and right, it does establish a number of conditions preclusive of the work noted by the Vocational Expert. For example, plaintiff has consistently reported fatigue and malaise to his doctors. At times this appears to be the direct residuals of the stroke, or secondary to depression or the result of a long standing infection. But the fatigue has been persistent and/or repeated over two years. (Tr. 134, 147, 164) Plaintiff has been on medication for depression for some years and only shortly before the hearing was taken off the Lexapro. In addition, the consultive physicians have noted brain involvement consistent with the right sided weakness. (Tr. 113) In the hospital, his February 2005 CT scan showed an area of injury in the left basal ganglia and examination showed right face, arm, and leg weakness without sensory or language deficits. Id. The medical evidence is consistent with plaintiff's inability to have full use of his legs and arms on the right side with some numbness and pain, and

- 10 -

with persistent or repeated fatigue. Thus, the hypothetical to the VE cannot serve as substantial evidence to support plaintiff's ability to perform the work.

Thus, the defendant's finding that plaintiff retained the residual functional capacity to perform semi-skilled light work operating construction equipment is not supported by substantial evidence. The medical evidence and plaintiff's testimony would limit him to at most unskilled light work. Application of the Grid Rule 202.06 directs a conclusion of disabled for a person like plaintiff limited to such unskilled work. Accordingly, it is recommended that the matter be remanded to the Commissioner with a direction to apply Grid Rule 202.06 and for a calculation of benefits due.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

- 11 -

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge


Dated: October 28, 2009

---

## PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on October 28, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan

- 12 -